IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**DEMETRIUS MOORE,**

    **Plaintiff,**

v.                                                       **Civil Action No. 5:16cv24**
                                                             **(Judge Stamp)**

**NORTHERN REGIONAL JAIL;**
**PRIME CARE MEDICAL;**
**WEXFORD MEDICAL;**
**OHIO VALLEY MEDICAL CENTER;**

    **Defendants.**

## REPORT AND RECOMMENDATION

### I. Background

On February 29, 2016, the Plaintiff filed a *pro se* complaint against the above-named defendants pursuant to 42 U.S.C. § 1983. On March 7, 2015, the Plaintiff was granted leave to proceed *in forma pauperis*, and on April 11, 2015, he paid his required initial partial filing fee. On August 31, 2016, he was granted leave to amend his complaint which added additional prayers for relief. This case is before the undersigned for an initial review and report and recommendation pursuant to LR PL P 83.01, et seq., and 28 U.S.C.§§ 1915(e) and 1915A.

### II. The Complaint

In his complaint, the Plaintiff asserts that during the month of January 2015, his lower right leg, which has poor circulation, began to bleed from dry/chapped skin. He

1

maintains that he complained to unknown officers and filled out several sick call slips but received no response. The Plaintiff further alleges that as a result of the failure of the Northern Regional Jail ("NRJ") and Prime Care Medical to provide him with timely medical care, his lower right leg became badly infected. In addition, the Plaintiff alleges that after providing him some care, he was denied further medical treatment by Prime Care.  The Plaintiff maintains an unknown officer from internal affairs took his recorded statement and took several picture of his infected wound. The Plaintiff also alleges that as a result of internal affairs involvement, one or two of the unknown nurses from Prime Care were terminated. Although the Plaintiff concedes that in March 2015, he began receiving daily treatment, the wound persisted due to his poor circulation.

In addition to allegations concerning the care of his leg, the Plaintiff also alleges that on November 5, 2015, his hand was broken and, after x-rays confirmed that fact on November 6th or 7th, unknown medical staff stated that he was on the list for outside surgery but could not give him a date or time. The Plaintiff contends that on December 24, 2015, he was taken to Ohio Valley Medical Center ("OVMC") for issues concerning his leg, where he also complained about his hand. The Plaintiff alleges that an unknown orthopedic doctor performed x-rays which confirmed that his right hand was broken. The Plaintiff explains that he assumed the unknown orthopedist at OVMC would perform surgery while he was hospitalized from December 24, 2015 through December 27, 2015.  However, when he was discharged on the 27th, the Plaintiff alleges that he realized he was being neglected by OVMC as well.

The Plaintiff also maintains that the bone had started to heal in a deformed manner. Upon inquiry on January 25, 2016, as to why it was taking so long to get an

2

appointment with a surgeon, the Plaintiff maintains that unknown medical staff from Wexford told him that his appointment had to be cancelled more than once due to transportation issues. The Plaintiff claims that he was then transferred to the Potomac Highlands Regional Jail ("PHRJ"). The Plaintiff maintains that because he never underwent surgery on his hand, he cannot make a fist and is basically handicapped.

For relief, the Plaintiff's complaint asks the Court to hold the NRJ, Prime Care and Wexford accountable and award him $1,000,000.00 "due to pain and suffering, neglect, failure to provide [him] with medical treatment in a timely manner, file treatment, mental and physical damage, and ignoring my medical conditions, unlawful treatment less than human treatment." ECF No. 1 at 12. In his amended motion for relief, the Plaintiff asks the Court to "hold NRJ, OVMC, Prime Care medical, and Wexford medical accountable for the nature of [his] injuries and damages and grant [him] one million dollars from NRJ, OVMC, Prime Care medical, and Wexford medical for a total of (4) million dollars do [sic] to pain and suffering, neglect, failure to provide [him] with medical treatment, mental and physical damage, and ignoring [his] medical conditions, unlawful treatment, and less than human treatment." ECF No. 14-1 at 1.

### III. Standard of Review

Because the Plaintiff is a prisoner seeking redress from a governmental entity or employee, the Court must review the complaint to determine whether it is frivolous or malicious. Pursuant to 28 U.S.C. § 1915A(b), a court is required to perform a judicial review of certain suits brought by prisoners and must dismiss a case at any time if the court determines that the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is

3

immune from such relief.

A complaint is frivolous if it is without arguable merit either in law or in fact. Neitzke v. Williams, 490 U.S. 319, 325 (1989). However, the court must read *pro se* allegations in a liberal fashion. Haines v. Kerner, 404 U.S. 519, 520 (1972). A complaint which fails to state a claim under Fed.R.Civ.P. 12(b)(6) is not automatically frivolous. See Neitzke at 328. Frivolity dismissals should only be ordered when the legal theories are "indisputably meritless,"[1] or when the claims rely on factual allegations which are "clearly baseless." Denton v. Hernandez, 504 U.S. 25, 32 (1992). This includes claims in which the plaintiff has little or no chance of success. See Estelle v. Gamble, 429 U.S. 97, 106 (1976).

## IV. Analysis

Under the Prison Litigation Reform Act (PLRA), a prisoner bringing a case with respect to prison conditions must first exhaust all available administrative remedies. 42 U.S.C. § 1997e. Exhaustion as provided in § 1997(e)(a) is mandatory. Booth v. Churner, 532 U.S. 731, 741 (2001). The Supreme Court of the United States has determined that the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 532 (2002).

In addition, although generally the exhaustion of administrative remedies should be raised by the defendant as an affirmative defense, the court is not foreclosed from

---

[1] Id. at 327.

dismissing a case *sua sponte* on exhaustion grounds. See Anderson v. XYZ Prison Health Services, 407 F.3d 674, 681 (4th Cir. 2005). If the failure to exhaust is apparent from the face of the complaint, the court has the authority under 28 U.S.C. §1915A to dismiss the case *sua sponte.* Id. at 682.

The West Virginia Regional Jail Authority makes available to its inmates a grievance procedure through which they may seek review of complaints related to the conditions of their confinement. Under this procedure, inmates must first submit a grievance to the Administrator of the facility in which they are confined. Upon receipt of the grievance, the Administrator may reject the grievance if it appears on its face to have been filed in bad faith, or if other administrative procedures exist that have not been utilized. If the grievance is rejected, the Administrator must advise the inmate of the rejection. If the grievance is not rejected, the Administrator may assign a staff member to investigate the complaint. Such staff is then required to submit a written report within forty-eight (48) hours. Within two days of receipt of the written report, the Administrator must provide a written decision which identifies the action taken, the reasons for the action, and the procedures that must be followed to properly appeal the decision. If the Administrator's response is unfavorable, the inmate may appeal to the Chief of Operations within five days of the receipt of the Administrator's decision. Upon receipt of an appeal, the Chief of Operations must immediately direct the Administrator to forward copies of all information relating to the inmate's grievance within two business days. The Chief of Operations may direct an investigation of the report be conducted and a written report be submitted within 15 days. Within 10 days of receiving all of the information related to the grievance, the Chief of Operations must provide a

written decision which identifies the corrective action taken or the reasons for denying the grievance. If the Chief of Operations' response is unfavorable, the inmate may appeal to the Office of the Executive Director within five days of receipt of the Chief of Operations' response. To do so, the inmate must mail to the Executive Director, copies of the original complaint and all of the responses thereto. The Office of the Executive Director must respond to an inmate's appeal within 10 days of receiving all the information. Unless the inmate has been notified of an extension of time for a response, the inmate may move to the next stage of the grievance process if the inmate does not receive a response at the expiration of the time limit at any stage of the process. The grievance process must be concluded within 60 days, inclusive of any extensions. If after completing this grievance procedure, the decision is unfavorable, the inmate may file an action in Federal Court.

The Plaintiff's complaint and amended complaint clearly establish that a prisoner grievance procedure is available at both the NRJ and PHRJ. ECF Nos. 1-2, 1-3. However, the plaintiff indicates that he filed a Level 1 by submitting sick call slips; a Level 2 by sending grievances to the medical administration; and Level 3 by sending grievance to Regional Jail Authority, without receiving a response. ECF No. 1 at 5. Consequently, it is apparent that the Plaintiff did not follow the grievance procedure by filing a Level 1 grievance with the jail administrator and a Level 2 grievance with the Chief of Operations, thus failing to exhaust each step of the procedure before filing in federal court. Because the failure to exhaust is clear on the face of the complaint, *sua*

*sponte* dismissal of this action is appropriate.[2]  See Anderson, 407 F.3d at 682.

Furthermore, even if the Plaintiff had properly exhausted his administrative grievances, his complaint would still be subject to dismissal. 42 U.S.C. §1983 provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

42 U.S.C. §1983. Therefore, in order to state a claim under 42 U.S.C. § 1983, the plaintiff must demonstrate that a person acting under color of state law deprived him of the rights guaranteed by the Constitution or federal laws. Rendall-Baker v. Kohn, 547 U.S. 830, 838 (1982).

---

[2] Despite the fact that the Supreme Court has stated that it "will not read futility or other exceptions into statutory exhaustion requirements . . . ," see Booth v. Churner, 532 U.S. at 741, n. 6, several courts have found that the mandatory exhaustion requirement may be excused in certain limited circumstances.  See Mitchell v. Horn, 318 F.3d 523, 529 (3d Cir. 2003) (summary dismissal for failure to exhaust not appropriate where prisoner was denied forms necessary to complete administrative exhaustion); Ziemba v. Wezner, 366 F.3d 161 (2d Cir. 2004) (defendant may be estopped from asserting exhaustion as a defense, where the defendant's actions render the grievance procedure unavailable); Aceves v. Swanson, 75 Fed.Appx. 295, 296 (5th Cir. 2003) (remedies are effectively unavailable where prison officials refuse to give inmate grievance forms upon request); Miller v. Norris, 247 F.3d 736, 740 (8th Cir. 2001) (a remedy is not available within the meaning of § 1997e(a) when prison officials prevent a prisoner from utilizing such remedy); Dotson v. Allen, 2006 WL 2945967 (S.D.Ga. Oct. 13, 2006) (dismissal for failure to exhaust not appropriate where Plaintiff argues that failure to exhaust was direct result of prison official's failure to provide him with the necessary appeal forms).  Here, plaintiff has failed to set forth any reason to excuse his failure to exhaust.

Here, the Plaintiff has failed to name any individual defendant. Instead, he has named the Northern Regional Jail, Prime Care Medical, Wexford Medical and the Ohio Valley Medical Center.

The Northern Regional Jail is not a proper defendant because it is not a person subject to suit under 42 U.S.C. § 1983. See Preval v. Reno, 203 F.3d 821 (4th Cir. 2000) (unpublished) ("[T]he Piedmont Regional Jail is not a 'person,' and therefore not amendable to suit under 42 U.S.C. § 1983); and Brooks v. Pembroke City Jail, 722 F.Supp. 1294, 1301 (E.D.N.C. 1989) ("Claims under § 1983 are directed at 'persons' and the jail is not a person amenable to suit."). Likewise, it is clear that neither Wexford nor Prime Care is a "person" for purposes of 42 U.S.C. § 1983, and there are no allegations against either involving policies or customs of deliberate indifference. Accordingly, neither is a proper defendant in a § 1983 action. Finally, Ohio Valley Medical Center is not a state actor and is therefore, not a proper defendant in this action.

## V. Recommendation

For the reasons set forth above, the undersigned recommends that the Plaintiff's Amended Complaint [ECF No. 24] be **DISMISSED WITHOUT PREJUDICE** for the failure to exhaust, and this case be closed.

Within ten (14) days after being served with a copy of this Report and Recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections should also be submitted to the

Honorable Frederick P. Stamp, Jr., United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk is directed to send a copy of this Opinion/Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, to his last known address as shown on the docket.

DATED: 9-13-2016

ROBERT W. TRUMBLE
UNITED STATES MAGISTRATE JUDGE